**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guadalupe Martinez, | No. CIV 05-508-TUC-JMR (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Jo Anne B. Barnhart, Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on December 19, 2005, and a cross-motion for summary judgment filed by the defendant on January 18, 2006.  [#10, 14][1]

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion, deny the defendant's cross-motion for summary judgment and remand for further proceedings.  The final decision of the Commissioner is not supported by substantial evidence.

---

[1] Clerk's record number.

PROCEDURAL HISTORY

Martinez filed an application for social security disability insurance benefits and supplemental security income benefits alleging a disability that began on November 17, 2002, due to "[s]evere uncontrolled diabetes" and the following symptoms: "always tired, back hurts, disoriented, feet swell, fingers numb."  (Tr. 59, 67-70, 241).

The Social Security Administration (SSA) denied her application initially and again upon reconsideration.  (Tr. 34-37, 41-44).  Martinez requested review and on March 21, 2005, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Frederick J. Graf.  (Tr. 15-23, 48).  The ALJ found Martinez was not disabled.  (Tr. 12-14).  Martinez appealed the ALJ's decision, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner.  (Tr. 6-10); 20 C.F.R. §§ 404.981.  She then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision.  She filed the instant motion for summary judgment on December 19, 2005.  The Commissioner filed the instant cross-motion for summary judgment on January 18, 2006.  Martinez filed a combined response and reply on February 2, 2006.

Claimant's Work History and Medical History

Martinez was born in 1950.  (Tr. 59).  She completed the tenth grade but did not graduate from high school or receive a GED.  (Tr. 269).  Martinez worked as a coordinator secretary at St. Mary's Hospital from 1967 until 1999 when she was fired for being too slow and forgetful.  (Tr. 271-74).

This job required one hour of walking and one-half hour of standing each day.  (Tr. 69).  For the majority of the day, Martinez was sitting; reaching; and writing, typing or handling small objects.  *Id.*  She did not climb, stoop, kneel or crawl.  *Id.*  She would crouch and handle, grab or grasp big objects for one hour per day.  *Id.*  The heaviest weight she lifted during the day weighed less than 10 pounds.  *Id.*

After she left St. Mary's hospital, Martinez found work with Urgent Care and Associates performing data entry.  (Tr. 274-75).  Again, her employer complained about the quality of her

1 work. *Id.* She took a medical leave of absence on November 17, 2002. *Id.* (This is her
2 disability onset date.) (Tr. 59). She began receiving benefits from the State of Arizona and
3 participated in a jobs program. (Tr. 276). She applied for many jobs but was never placed. (Tr.
4 277-78).

5 At the administrative hearing, Martinez testified she is disabled due to numbness and
6 swelling in her hands and feet, difficulty walking, and forgetfulness. (Tr. 278-82). She is 5' 2"
7 tall. (Tr. 269). At the hearing, her weight was 230 pounds, but she estimated her "normal"
8 weight at the time she stopped working was 200 pounds. *Id.*

9 The medical record begins in April of 2000 with the treatment notes of John Harris, D.O.
10 (Tr. 209). Harris noted a history of chronic anxiety. *Id.* He also noted a history of diabetes
11 since 1987, hypothyroidism and arthritis. (Tr. 210).

12 In July of 2001, Harris treated Martinez for leg pain, numb toes, and fatigue. (Tr. 199).
13 In August of 2001, he treated her for arthritis. *Id.* He noted a history of spondylolisthesis
14 (forward displacement of the lumbar vertebra). *Id.*

15 In February of 2003, Martinez reported severe depression. (Tr. 195). Harris noted:
16 "anxiety better, but now is depressed." *Id.* Harris wrote: "patient really needs psychiatric help."
17 *Id.*

18 In March of 2003, Roland G. Nathan, M.D., reviewed Martinez' medical records and
19 completed a Psychiatric Review Technique Form for the disability determination service. (Tr.
20 32, 103-116). Nathan found no medically determinable mental impairment. (Tr. 103-116). The
21 disability determination service lists Martinez' primary and secondary diagnoses as diabetes and
22 obesity respectively. (Tr. 32).

23 Later in March, Martinez was given a Battery for Health Improvement assessment by
24 Daniel Bruns, Psy.D., John Mark Disorbio, Ed.D. and Julia Copeland Disorbio, P.T. (Tr. 117-
25 124). She had a "very high score on the Symptom Dependency scale and a high score on the
26 Depression scale." *Id.* The report concluded "[m]ental health treatment in combination with
27 physical rehabilitation treatment is warranted." *Id.*

28

1   On April 10, 2003, Harris noted Martinez is "[g]oing to school now to keep busy and
2   help depression." (Tr. 194).

3   On April 23, 2003, Martinez was given a Psycho/Social Assessment by rehabilitation
4   specialist, Donald R. Ross, Ed.D. (Tr. 125-128). This assessment tests the worker's general
5   intelligence, reading skills, mathematics skills, and manual dexterity. *Id.* Ross identified five
6   jobs that Martinez could perform based on her vocational testing – Wool Sampler, Copy
7   Messenger, Route Aid, Outsole Scheduler, and Machine Pan Greaser. *Id.* He noted her current
8   skills assessment was lower than that expected from her work history. *Id.* He opined this
9   discrepancy could be due to situational depression or fatigue. *Id.*

10  On April 30, 2003, Martinez was evaluated by Lisa Sumner, M.D., to assist her
11  vocational placement (Tr. 129-132). Sumner noted a history of spondylolisthesis with severe
12  back pain, diabetes, depression, hypothyroidism and anxiety with panic attacks. *Id.* She
13  estimated Martinez could lift 10 pounds occasionally and stand at least 2 hours per day. *Id.* She
14  noted barriers to employment included uncontrolled diabetes, "depression anxiety" and back
15  pain. *Id.*

16  On May 30, 2003, Martinez' physical capacities were evaluated by David J. Weaver,
17  M.S., for the State JOBS program. (Tr. 133-137). Martinez' fingering skills were in the low
18  "Entry" range. *Id.* She could not complete the stooping, kneeling, crouching test due to
19  lightheadedness. *Id.* Her forward reach and overhead reach testing scores were in the "Below
20  Competitive" range. *Id.*

21  September 22, 2003, is the protected filing date of Martinez' application for social
22  security disability insurance benefits and supplemental security income benefits. She alleged
23  an onset of disability date of November 17, 2002. (Tr. 15, 58, 59).

24  On February 18, 2004, Martinez was examined by Francisco A. Sanchez, Ph.D., for the
25  disability determination service. (Tr. 143-47). He diagnosed "phase of life problem" on Axis

1  I of the DSM IV[2] but concluded "she is not indicating any significant constellation of symptoms
2  that would point to a mental disorder at this time." *Id.* He considered her ability to "Maintain
3  attention/concentration" to be "Good [–] Limited, but Satisfactory." *Id.* He rated her ability to
4  "Deal with work stresses" as "Poor or None." *Id.* She was "Seriously Limited but not
5  Precluded" from "Deal[ing] with the public." *Id.* She was "Seriously Limited but not
6  Precluded" from "Understand[ing], remember[ing] and carry[ing] out" "Simple," "Detailed"
7  or "Complex" job instructions. *Id.*

8  On June 9, 2004, Enrique Suarez, M.D., examined Martinez for the disability
9  determination service. (Tr. 148-151). His impression was (1) diabetes mellitus insulin
10 dependent with no total control at this point, (2) hypothyroidism, normal with medication,(3)
11 vision 20/50 without glasses, (4) history of lumbosacral spondylolisthesis, (5) stress and anxiety
12 problem appeared to be responding to the medication, (6) pyelonephritis by history
13 (inflammation of the kidney and of the pelvis). *Id.* He predicted she could lift 25 pounds
14 occasionally and 15 pounds frequently; stand and walk two to four hours in an eight-hour day.
15 *Id.* He found no limitation in sitting but noted she would benefit from shifting position. *Id.* He
16 could occasionally and frequently climb, balance, stoop, kneel and crawl. *Id.* She had no
17 limitation on reaching and handling, feeling, seeing, speaking, hearing and traveling. *Id.*

18 In June of 2004, John Hayden, M.D., evaluated Martinez' medical record for the
19 disability determination service. (Tr. 33, 152-159). Hayden diagnosed diabetes mellitus,
20 spondylolisthesis and hypothyroid. (Tr. 33). He found no exertional limitations established.
21 (Tr. 152-159).

22 In June of 2004, Paul Tangeman, Ph.D., evaluated Martinez' medical records and
23 completed a Psychiatric Review Technique Form for the disability determination service. (Tr.
24 33, 160-173). He found no medically determinable psychological impairment. *Id.*

---

[2] Axis I refers to "clinical disorders" such as anxiety disorders, cognitive disorders, and mood disorders. Diagnostic and Statistical Manual of Mental Disorders 26 (4th ed.1994).

- 5 -

In December of 2004, Juan Pena, M.D., evaluated Martinez' physical condition. (Tr. 212-215). He diagnosed insulin dependent diabetes, hypothyroidism and osteoporosis. *Id.* Her symptoms were fatigue, leg cramping, extremity pain and numbness, and hypoglycemic attacks. *Id.* She could sit for 2 hours per day. *Id.* She could stand/walk for 2 hours per day. *Id.* She must walk around every 30 minutes. *Id.* She could occasionally lift 10 pounds. *Id.* She should only rarely twist, stoop, crouch, climb ladders or stairs. *Id.*

In October of 2004, Martinez was evaluated by Caryl Brailsford, M.D., an orthopedic specialist, at the request of Dr. Pena. (Tr. 178-180, 256). She diagnosed spondylolisthesis secondary to spondylolysis (the partial disintegration of a vertebra), some evidence of instability, probable peripheral neuropathy, early hip degenerative joint disease. (Tr. 178-180). She recommended Martinez avoid standing and walking for more than 15 to 20 minutes. *Id.* She should avoid bending frequently, and only rarely lift over 20 pounds. *Id.*

Martinez was treated by Brailsford in March of 2005.[3] (Tr. 257-258). Brailsford diagnosed lateral epicondylitis, spondylolisthesis secondary to spondylolysis and peripheral neuropathy from diabetes. *Id.* She predicted Martinez was unable to walk more than five to ten minutes at a time or stand more than ten to twenty minutes at a time. *Id.* She warned:

> I think it would be difficult for her to continue as a productive worker. I would anticipate that once her problems are under control it is possible that she could return to the workplace but certainly this would be over a year and would be unlikely without significant changes in her weight and diabetes.

*Id.*

On March 21, 2005, Martinez appeared at a hearing before Administrative Law Judge (ALJ) Frederick J. Graf. (Tr. 15-23, 48). She testified she stands 5' 2" tall and weighs 230

---

[3] This report was not before the ALJ, but it was included in the record before the Appeals Council. (Tr. 5). Accordingly, this court may consider it. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir 1993) ("[w]e consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.").

- 6 -

pounds. (Tr. 269). She claimed she is disabled due to numbness and swelling in her hands and feet, difficulty walking, and forgetfulness. (Tr. 278-82).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[4] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[4] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 7 -

1 If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the
2 claimant cannot perform any past work due to a severe impairment, then the ALJ must move
3 to the fifth step which requires consideration of the claimant's RFC to perform other substantial
4 gainful work in the national economy in view of claimant's age, education, and work
5 experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

6 In determining whether the claimant retains the ability to perform other work, the ALJ
7 may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA.
8 *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988).
9 The grids categorize jobs according to their exertional requirements such as sedentary work,
10 light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Based on
11 the claimant's exertional ability, age, education, and work experience, the grids determine
12 whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims
13 where they completely and accurately describe the claimant's abilities and limitations. *Id.* at
14 1101-02. If the claimant has significant non-exertional limitations, the grids do not apply.
15 *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are
16 limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335,
17 1340 (9th Cir.1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If
18 significant non-exertional limitations prevent the claimant from performing the full range of
19 work in any exertional category, the ALJ must take the testimony of a vocational expert to deny
20 the claim. *Id.* at 1341.

21

22 <u>The ALJ's Findings</u>

23 At step one of the disability analysis, the ALJ found Martinez had not engaged in any
24 substantial gainful activity since her alleged onset date. (Tr. 22). At step two, he found
25 Martinez had severe impairments: poorly controlled diabetes mellitus, obesity, hypertension,
26 hypothyroidism, back pain, mild anemia, and phase of life problems. *Id.* At step three, the ALJ
27 found Martinez' impairments did not meet or equal the criteria for any impairment found in the
28

Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Martinez' residual functional capacity. *Id.* He made the following finding:

> [T]he claimant has the residual functional capacity to perform the exertional demands of sedentary work, or work which is generally performed while sitting and does not require lifting in excess of ten pounds. She can stand/walk for 2-4 hours, and sit for 6 hours in an 8-hour workday. She must change positions frequently from sit to stand due to poorly controlled diabetes mellitus and back pain. She can occasionally climb, balance, stoop, kneel, and crawl. She has no manipulative and environmental restrictions. The claimant has no mental limitations.

(Tr. 21). At step four, the ALJ concluded Martinez could return to her past relevant work as a clerk as she previously performed that job. *Id.*; *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (The ALJ may consider either the job as the claimant actually performed it or the job as it is generally performed in the national economy.).

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by

1    substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th
2    Cir. 1992) (citations omitted).  The Commissioner's determination that a claimant is not
3    disabled must be upheld if the Commissioner applied the proper legal standards and the record
4    as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d
5    328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988);
6    *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such
7    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
8    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d
9    643, 644 (9th Cir. 1987).  The standard is less than a "preponderance of the evidence" standard.
10   *Matney,* 981 F.2d at 1019.

11   "[I]f the evidence can support either outcome, the court may not substitute its judgment
12   for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400).  When
13   applying the substantial evidence standard, however, the court should not mechanically accept
14   the Commissioner's findings but should review the record critically and thoroughly. *Day v.*
15   *Weinberger*, 522 F.2d 1154 (9th Cir. 1975).  Reviewing courts must consider the evidence that
16   supports as well as detracts from the Commissioner's conclusion.  *Id*. at 1156.  A denial of
17   benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing
18   the evidence even though the findings may be supported by substantial evidence.   *Frost v.*
19   *Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.
20   1978).

21   In evaluating evidence to determine whether a claimant is disabled, the opinion of a
22   treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
23   1993). The Commissioner may reject a treating physician's uncontradicted opinion only if she
24   sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
25   1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the treating physician's
26   opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she
27   provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,*
28   81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition

- 10 -

and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir.1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The decision of the ALJ is not supported by substantial evidence. The evidence does not support the ALJ's conclusion that Martinez was capable of returning to her past relevant work.

The ALJ concluded Martinez had the residual functional capacity to perform the exertional demands of sedentary work. He then concluded she could perform her past relevant work as a clerk as she previously performed that job. The ALJ based this conclusion, in part, on her past performance in that particular job. His reasoning reads as follows:

> The record also indicates that the claimant stopped working because she was fired rather than because of her allegedly disabling impairments. Further there is no evidence of a significant deterioration in the claimant's medical condition since she stopped working. A reasonable inference, therefore, is that the claimant's impairment would not prevent the performance of that job since it was being performed adequately at the time she stopped working despite a similar medical condition.

The record, however, does not support the ALJ's conclusion. Martinez stopped working *because* of her impairments, not in spite of them.

Martinez testified at the hearing about her two jobs in the health care industry.[5] She worked at St. Mary's Hospital as a "coordinator secretary" from 1967 until 1999 when she was fired for performing her job poorly. (Tr. 271). Her employer complained she was too slow and had difficulty performing the physical tasks required for the job. (Tr. 272). Her employer also complained she was forgetting things – things she had been doing for approximately 32 years. *Id.* According to Martinez' uncontested testimony, she was fired from that job *because* of her disabling impairments. Martinez fared little better at her next position with Urgent Care and Associates where she performed data entry. (Tr. 271, 274-75). There, she was again accused of working too slowly. (Tr. 275). She eventually took a leave of absence in part because she wanted to care for her son and in part because her employer was so dissatisfied with her performance. (Tr. 276).

Contrary to the ALJ's assertion, uncontradicted direct evidence indicates Martinez is unable to perform her past relevant work as a clerk. There is no evidence that Martinez was malingering on the job. The ALJ, himself, noted that Martinez applied for many other jobs after she left Urgent Care and Associates. She clearly wanted to work. Unfortunately, she was unable to perform the tasks required at her previous jobs. The ALJ's conclusion that Martinez could perform her past relevant work was error.

Further, his finding as to her residual functional capacity was error. If Martinez had the residual functional capacity determined by the ALJ, then she would have been able to

---

[5] In her Work History Report, Martinez combined these two jobs under the title "clerk." (Tr. 64). She probably did this because the form asks the claimant to list "the *kinds* of jobs you have had in the last 15 years . . ." *Id.* (emphasis added).

- 12 -

1 satisfactorily perform her past relevant work. *Compare* (Tr. 22, ¶ 6) *with* (Tr. 68-69). As
2 discussed above, however, she demonstrated an inability to do this work when she was fired in
3 1999. Accordingly, the ALJ's evaluation of her RFC was error.

4 It appears the ALJ failed to completely appreciate the extent of Martinez' mental
5 impairment.[6] A detailed evaluation of her mental state was completed by Dr. Sanchez for the
6 disability determination service. (Tr. 143-47). The ALJ discussed this evaluation in his
7 decision and appeared to rely on its conclusions. (Tr. 19). He found Sanchez' opinions to be
8 "well supported by objective findings and . . . not inconsistent with the other substantial
9 evidence." (Tr. 20) (citations omitted). The ALJ quoted with apparent approval Sanchez'
10 finding that Martinez had "no difficulties in maintaining social functioning and no difficulties
11 in maintaining attention and concentration." *Id.* He explicitly accepted Sanchez' diagnosis of
12 "phase of life problem." The ALJ, however, apparently overlooked Sanchez' findings that limit
13 Martinez' RFC. Sanchez rated Martinez' ability to "Deal with work stresses" as "Poor or
14 None." *Id.* She was "Seriously Limited but not Precluded" from "Deal[ing] with the public."
15 *Id.* She was "Seriously Limited but not Precluded" from "Understand[ing], remember[ing] and
16 carry[ing] out" "Simple," "Detailed" or "Complex" job instructions. *Id.* These findings are
17 consistent with Martinez' demonstrated difficulty with performing her job as a clerk. They
18 should have been credited by the ALJ.

19 Sanchez' conclusions are inconsistent with the findings of Nathan and Tangeman who
20 found no medically determinable mental impairment.[7] Nevertheless, Sanchez is an "examining
21 physician," and his opinions should trump the opinions of the "non-examining physicians,"
22 Nathan and Tangeman, unless the ALJ provides "specific and legitimate reasons that are

---

[6] The court expresses no opinion as to whether the ALJ overestimated Martinez' physical condition as well.

[7] State Agency physician Nathan rendered his opinion in 2003 without the benefit of Sanchez' report. Accordingly, his contrary conclusion about Martinez' mental condition may stem from incomplete information rather than from a difference of medical opinion.

- 13 -

supported by substantial evidence in the record."[8] *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1996). This, he did not do.

In his decision, the ALJ explained his reliance on the State Agency non-examining physicians as follows:

> In reaching the conclusion that the claimant is not disabled, the undersigned has accorded particular weight to the assessments completed by the State Agency physicians. These assessments are persuasive given that they are supported by the evidence in the record, and because these physicians are experts in the evaluation of medical issues in disability claims under the Social Security Act (Social Security Ruling 96-6p). These assessments are also consistent with the opinions of Drs. Sumner, Suarez, Brailsford [Exhibit 14F/3-5], and Sanchez as defined in the regulations. . . .

(Tr. 20) (internal citations omitted). His argument, however, is not persuasive.[9]

Contrary to the ALJ's assertion, the State Agency physicians' opinion that Martinez has no mental impairments is not supported by evidence in the record of her on-the-job performance. Moreover, their opinion is not consistent with the opinions of the physicians cited by the ALJ. It is not consistent with Sumner's opinion that Martinez' "[d]epression anxiety [is] [c]learly . . . affecting the patient's overall ability to work." (Tr. 132). It certainly is not consistent with Sanchez' opinion. *See above*. Brailsford did not express an opinion as to Martinez' mental condition in Exhibit 14F.[10] (Tr. 176-180). Accordingly, it cannot be said that her opinion of Martinez' mental condition was consistent with the opinion of the State Agency physicians. Suarez did not evaluate Martinez' mental impairments in any detail. (Tr. 148-151). Presumably, this is not his area of expertise. His only statement addressing her mental state was: "Stress and anxiety problem appeared to be responding to the medication." (Tr. 151). While this is some evidence that Martinez' mental condition is amenable to treatment, it does

---

[8] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir.1995).

[9] The ALJ does not explicitly indicate whether he is discussing the State Agency physicians' physical assessment, mental assessment or both. The court assumes the ALJ's argument applies, at least in part, to the State Agency physicians' assessment of Martinez' mental condition.

[10] The assessment of the State Agency physicians is contradicted by Brailsford's later assessment in March of 2005, but this report was not before them or the ALJ.

- 14 -

1 not support the State Agency physicians' opinion that she has "no medically determinable
2 psychological impairment." (Tr. 103, 160).

3 Finally, while the State Agency physicians might be "experts in the evaluation of medical
4 issues in disability claims under the Social Security Act" they are still "*non-examining*
5 *physicians*" who labor under an inherent disadvantage explicitly identified in this legal term of
6 art. Unless the ALJ identifies the presence of special circumstances, their opinions as to
7 Martinez' medical condition are not weighed as heavily as are the opinions of Martinez' treating
8 and examining physicians.

9 The ALJ failed to give specific and legitimate reasons for crediting the opinion of the
10 State Agency non-examining physicians over the opinion of Martinez' examining physician,
11 Sanchez. Accordingly, Sanchez' opinion as to Martinez' mental impairments should be credited
12 as a matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1996) ("Where the
13 Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or
14 examining physician, we credit that opinion as a matter of law."); *See also Benecke v.*
15 *Barnhart*, 379 F.3d 587, 595 (9th Cir.2004) ("Allowing the Commissioner to decide the issue
16 again would create an unfair 'heads we win; tails, let's play again' system of disability benefits
17 adjudication.").

18 The Commissioner argues the ALJ was entitled to reject parts of Sanchez' evaluation
19 because they were inconsistent with his clinical findings or contrary to his other conclusions as
20 to her mental ability. The ALJ, however, did not advance these arguments in his decision. The
21 court, therefore, cannot consider them. *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir.
22 2001).

23 The court does not reach the claimant's alternative argument that the ALJ failed to
24 properly consider the effect of Martinez' obesity in his assessment of her RFC. The case should
25 be remanded with instructions for the Commissioner to reevaluate Martinez' RFC consistent
26 with this opinion and proceed to step 5 of the disability analysis. Accordingly, the
27 Commissioner will have another opportunity to address the issue of obesity and may revise this
28 aspect of her decision if she so desires.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and enter an order remanding the plaintiff's claim for further proceedings. [#12, 19]  The Commissioner should accept Sanchez' evaluation of Martinez' mental limitations, reevaluate her RFC consistent with this opinion and proceed to step 5 of the disability analysis.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation.  If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).  If objections are filed, the parties should direct them to the District Court by using the following case number: CIV 05-508-TUC-JMR.

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 2nd day of March, 2006.

_____
Glenda E. Edmonds
United States Magistrate Judge